WAUSAU UNDERWRITERS INS.
CO. and the First Liberty
Ins. Corp., Plaintiffs,

v.

DANFOSS, LLC, Defendant.

CASE NO. 14–14420–CIV–
ROSENBERG/LYNCH

United States District Court,
S.D. Florida.

Signed September 30, 2015

Jeffrey Scott Lapin, Jonathan R. Rosenn, Lapin & Leichtling LLP, Coral Gables, FL,

Michael R. Morris, Mary Park Morris, Morris & Morris PA, West Palm Beach, FL, for Plaintiffs.

Adam G. Unikowsky, Jan A. Larson, Jenner & Block, LLP, Wasington, DC, Matthew L. Jacobs, Jenner & Block, LLP, New York, NY, Richard Hugh Lumpkin, Christopher Thomas Kuleba, Heather Jo Gorin, Ver Ploeg & Lumpkin, P.A., Miami, FL, for Defendant.

### ORDER ON DEFENDANT'S EMERGENCY MOTION TO COMPEL PLAINTIFFS TO PRODUCE AN ALTERNATIVE 30(b)(b) WITNESS AND FOR SANCTIONS (DE 53) AND ON PLAINTIFFS' MOTION FOR SANCTIONS FOR DISCOVERY MISCONDUCT(DE 55)

FRANK J. LYNCH, JR., CHIEF UNITED STATES MAGISTRATE JUDGE

**THIS CAUSE** comes before this Court upon the above Motions. Having reviewed the Motions and their respective Responses and Replies, this Court finds as follows:

1. Through the above two Motions, both sides seek relief regarding the other's Rule 30(b)(6) corporate representative witness. The Defendant filed its Motion first, on September 16, 2015, seeking emergency relief in the form of an alternate witness to be deposed by September 28, 2015 (to coincide with the time when its Response to the Plaintiffs' Motion for Summary Judgment was due). By time the Defendant filed its Motion, discovery already had ended—on September 11th. (The original discovery deadline was August 21, 2015.) The disputed deposition took place on September 10, 2015, one day before the discovery deadline. This Court notes that problems concerning last-minute discovery do not present a true emergency. The Plaintiffs then filed their Motion two days after the Defendant's Motion. This Court directed the parties to brief both Motions on an expedited basis. This Court now rules on them jointly.

■ 2. Before addressing the Motions' merits, this Court reviews the standard for what is expected of a Rule 30(b)(6) witness.

Both the Plaintiffs (who for present purposes are acting collectively) and the Defendant are corporate entities. As such, Rule 30(b)(6) provides the vehicle for deposing them. Rule 30(b)(6) obligates an entity to designate a person "to testify on its behalf". The designated person "must testify about information known or reasonably available to the organization." The party wanting to depose the corporate entity's representative, in turn, "must describe with reasonable particularity the matters for examination." The entity may designate more than one person if necessary to respond to all of the noticed topics. This Court also applies the very thorough discussion of a corporate entity's Rule 30(b)(6) obligations found in *QBE Ins. Corp. v. Jorda Enters., Inc.,* 277 F.R.D. 676 (S.D.Fla.2012). In short, a corporation must make a conscientious, good faith effort to designate the person having knowledge of the matters sought and to prepare that deponent to answer questions about the subject matter topics "fully, completely, and unevasively". *See In re Brican America LLC Equipment Lease Litigation,* 2013 WL 5519969, *3 (S.D.Fla.2013). The above describes what is expected, and this Court applies that standard to both depositions equally. In their Reply the Plaintiffs lament the other end of the spectrum: "the sorry state of affairs occasioned by discovery misconduct". This Court considers these Motions with those concerns in mind, as well.

3. This Court addresses first the Defendant's Motion. On August 7, 2015 the Defendant noticed the deposition of the Plaintiffs' Rule 30(b)(6) witness. The deposition was set to occur five weeks later, on September 10, 2015. It was set to take place in Washington, DC, and it appears that the deposition location required Defendant's counsel—and the deponent, herself, who lives in New Hampshire—to travel.

4. The Plaintiffs designated Carrie Ayers as their corporate representative. Ms. Ayers has a degree in accounting and an MBA. At the time of the deposition she had worked for the Plaintiff, Liberty Mutual, for thirteen months. She is a Senior Receivables Analyst in the billings and collection department. She is not a corporate officer. Before that, she worked for her family's electrical contracting business as its comptroller. Before that, she had worked for Liberty Mutual for three and a half years as a senior accountant. In addition to appearing as the Plaintiffs' joint Rule 30(b)(6) witness, Ms. Ayers executed an affidavit that the Plaintiffs submit in support of their summary judgment motion, signed Liberty's answers to interrogatories, and will be one of the Plaintiffs' witnesses at trial.

5. The Defendant submitted a list of the subject matter topics that it wanted to ask about. The Defendant identified nineteen topics tailored to the issues dispositive to the case. To summarize the relevant issues, the Plaintiffs conducted three audits of two Worker's Compensation insurance policies that the Defendant had bought. Those audits resulted in a substantial premium rate increase for which the Plaintiffs now seek payment. There are various sub-issues underlying the Plaintiffs' present claim for additional premiums and how it came about, but for ease of discussion this Court does not go into the dispute in depth. Instead this Court refers to the underlying issues generally and by shorthand only to the extent needed to give this ruling context. The details of what happened this Court leaves for the fact-finder and for rulings on the merits.

6. The noticed topic areas concern the main issues in dispute in this case. It was the Defendant's opportunity to learn about the Plaintiffs' position on the issues and to learn what at the administrative/managerial level affected how the Defendant's insurance policies and rate increases were handled. The Plaintiffs filed no objections during the intervening five weeks. Nor did Ms. Ayers do much to prepare herself for the deposition during the intervening five weeks. Her preparation was limited to reviewing audit notes and conferring very briefly with just one of the auditors who worked on the Defendant's policies. That consultation was limited to confirming the existence of auditing manuals.

7. Ms. Ayers is not a fact witness to the events specific to the handling of the Defendant's insurance policy premiums. She did work directly on the subject audits, did not prepare the Defendant's statement of ac-

count, and did not make billing and collections decisions regarding it. Nor did she ask those employees who did about their decision-making process that led up to the Defendant's rate increase. She generally denied knowing anything about the specifics involved with respect to the Defendant's account and rate increase. By contrast, she was able to discuss how and why accounts are audited, statements issued, and billing/collection decisions made in a general fashion. As she explained it generally, all such decisions are made on an ad hoc, case-by-case basis. For explanations of how matters are handled, she deferred to the individual auditors, underwriters, etc.

8. Ms. Ayers brought little insight into the Plaintiffs' procedures for audits, rate settings, and billing/collections. Her answers along these lines were limited. She affirmed, for example, the existence of a standard general business practice of increasing premiums by 125% of their initial estimate for insureds who fail to produce requested information. There is a general business practice for reopening prior audits, as well. She could not answer whether the Plaintiffs departed from any standard procedure in calculating the Defendant's premium on May 9, 2014. She could not point to any specific regulation or insurance policy provision to support the Plaintiffs' premium rate increase. Nor is she familiar with the Plaintiffs' standard auditing procedures and guidelines. (These are merely summations of examples from the deposition.)

9. Ancillary to the handling of the Defendant's insurance policy and rate increase is an issue about how it might interrelate with the Plaintiffs' decision to withdraw from the Worker's Compensation insurance market. Ms. Ayers had no knowledge of any aspect of that. Nor did she know how auditors are compensated and whether any aspect of the premium rate increase and collection activity impacted compensation, but she did deny the existence of any compensation-related policies that would have affected how those who worked on the Defendant's rate increase handled that rate increase.

10. The Plaintiffs do not defend the degree of Ms. Ayers' preparations and factual familiarity (or lack thereof). Instead the Plaintiffs respond by deflecting attention away from that issue. They do so in three respects. First, they challenge the Defendant's right to discovery in the first place. They deny that the Defendant has any legal right or standing to dispute their claim for payment of the increased premium charge. The implication is that they have been participating in pre-trial discovery only superficially. This is no defense. There has been no dispositive legal ruling in their favor (and the Defendant hotly disputes the Plaintiffs' arguments). Until such time when the Plaintiffs obtain a favorable ruling on a question of law, they remain obliged to participate in discovery fully and in good faith. Nor did they raise any such objection to the deposition beforehand. The simple fact that everyone was going to the trouble of participating in the out-of-town deposition, alone, obliged the Plaintiffs to make it a productive effort.

11. Second, the Plaintiffs regard the deposition as improperly taken and thus void. For whatever reason, no court reporter was present when the deposition began. The parties handled the situation laudably at the time, finding a mutually agreeable solution to permit the deposition to proceed until a court reporter arrived to take over. It is only now, in their Response, the Plaintiffs reproach the Defendant and deem the deposition void.

12. Third, the Plaintiffs blame the inadequacy of Ms. Ayers' answers on the Defendant for asking what they characterize as flawed questions. This Court disagrees. In their Response the Plaintiffs go further and justify and otherwise explain away the answers that Ms. Ayers gave. In effect the Plaintiffs use their Response to supplement the deposition. As this Court finds below, the Plaintiffs are precluded from offering any new testimony or taking any positions inconsistent to or beyond the deposition. That does not preclude the Plaintiffs from making legal argument, but it does limit what factual assertions the Plaintiffs may rely upon. The deposition—and not the Response—was the Plaintiffs' opportunity to develop the factual record and to set forth the reasons why the Defendant's premiums were handled the way they were.

13. This Court finds that on balance, the Plaintiffs did not meet their Rule 30(b)(6) obligations. The remedy the Defendant primarily seeks is to compel the Plaintiffs proffer a different Rule 30(b)(6) witness for it to depose. Even at the time of the Motion's filing, it was already too late for any additional discovery. The current procedural posture of this case forecloses that avenue of relief. Discovery is over, and dispositive motions are being briefed.

14. As an alternative remedy the Defendant asks this Court to preclude the Plaintiffs "from later offering trial testimony on any of the topics for which the corporate representative was unable to provide adequate deposition testimony on September 10, 2015." This Court grants the Motion to that extent. The Defendant goes no further to explain this means of relief, however. For example the Defendant does not expressly separate what testimony topics are precluded from those that are not. Therefore this Court re-fashions the Defendant's alternative form of relief as follows: This Court finds the more practical course of action is simply to bind the Plaintiffs' to their designated deponent's answers. Essentially this Court does nothing more than apply the general rule that a Rule 30(b)(6) deponent's answers bind the entity that the deponent is representing.

15. This is the most practical course of action for several reasons. First, it spares the Court—and the parties—from having to figure out what deposition answers were adequate and what were not. That would have been a difficult tasks given the fact that Ms. Ayers gave few, if any, in depth, substantive explanations of the relevant issues. Second, it gives full effect to the Plaintiffs' Rule 30(b)(6) obligations and the natural consequences stemming therefrom. It was the Plaintiffs who designated Ms. Ayers as their corporate representative, and it was the Plaintiffs who had the most influence over her degree of preparation. The Plaintiffs therefore are bound by her answers given on their behalf. This includes her "I-don't-know" answers. The corollary of this is that the Plaintiffs may not change their deposition answers—or proffer new explanations or assertions—later as evidence. The *Jorda* Court, *supra,* discusses this consequence in at No. 28 and No. 29 of its guiding principles. This outcome also moots the question of sanctions. There is no need for sanctions or for compensation of time and travel's costs if the deposition is given full effect.

16. As such, Ms. Ayers' deposition answers are deemed fully binding on the Plaintiffs. They may not proffer any testimonial evidence regarding their collective position on the notice topics contrary to or in addition to what Ms. Ayers answered on their behalf. The Defendant may point to any inconsistencies between her deposition answers and previous discovery answers or the affidavit that she signed on the Plaintiffs' behalf. This does not preclude the Plaintiffs from raising any legal argument, but it does preclude them from proffering any factual assertions contrary to or in addition to the Rule 30(b)(6) deposition answers. Lastly this ruling does not affect the proffer of testimony from fact witnesses who are giving evidence of matters of personal knowledge and direct involvement.

17. In other words the above ruling precludes the Plaintiffs from later offering any inconsistent trial testimony, and to this extent, it represents a modification of the requested form of relief. This Court makes one exception, however. This Court does grant the Defendant's alternative form of requested relief in full and without the above modification for one particular subject matter area: the Plaintiffs' withdrawal from the Worker's Compensation market (subject of Topic Nos. 12, 13 & 14). Simply put, the Plaintiffs should have either prepared Ms. Ayers on these topics or designated another deponent who could talk about it. This was a subject matter area over which Ms. Ayers had the least familiarity and evidently was in no position to know. Because the time for discovery has ended, the only fair resolution to this part of the deposition dispute is to give the Defendant the benefit of Rule 37(b)(2)(A)(i) and (ii).

18. This Court turns next to the Plaintiffs' Motion for Sanctions for Discovery Misconduct regarding the deposition of the Defendant's designated Rule 30(b)(6) corporate

representative. The Defendant designated Eve Clark as its corporate witness, and her deposition took place on September 4, 2015. In its Response (DE 60) to the Plaintiffs' Motion for Sanctions, the Defendant highlights how Ms. Clark—in sharp contrast to Ms. Ayers—diligently and extensively prepared for the Rule 30(b)(6) deposition. The Defendant highlights how Ms. Clark—unlike Ms. Ayers—answered "I don't know" rarely (and two of those times were for hypothetical questions).

19. Ms. Clark even came to the deposition with notes which the Plaintiffs refer to negatively as a "script" and the Defendant refers to neutrally as an "outline". The Plaintiffs do *not* complain that Ms. Clark—unlike Ms. Ayers—was unable to answer questions substantively. Rather the Plaintiffs complain about Ms. Clark's reliance on her script/outline in answering the questions. In the briefing of their Motion, the Plaintiffs stress how an incorporated party is obliged to produce a knowledgeable person to testify on its behalf at deposition. Ms. Clark's reliance on her script/outline rendered her answers void. The Plaintiffs seek the severest sanctions for the deficient deposition: the striking of Defendant's Amended Answer, Affirmative Defenses, and Counterclaim.

20. The Plaintiffs had given notice of fourteen topics for Ms. Clark's deposition. Even though the Plaintiffs deny the Defendant's legal standing to even contest the new premiums in the first place, the Plaintiffs still noticed the deposition in order to ascertain the Defendant's position. The instant Motion and Reply strongly imply the Plaintiffs' expectation of the Defendant's full and good faith participation in that discovery proceeding. This stands in sharp contrast to the dismissive way in which the Plaintiffs describe their own discovery obligations.

21. In any event the Plaintiffs overstate the impropriety of Ms. Clark's reliance on the script/outline. This Court sees nothing egregiously wrong in how Ms. Clark used it to answer some deposition questions. The Defendant emphasizes how Ms. Clark relied on the script/outline for just a minor part of the deposition (which ran from 10:00 am to 4:30 pm and whose transcript is 238 pages

long). Ms. Clark relied on it to help her answer five of the fourteen noticed topic areas. As this Court summarizes them, these five topic areas asked the Defendant to state expressly and fully its various defenses and claims in the context of its legal arguments. The Defendant justifies the need for the script/outline at length in its Response. They were complicated subject matters and beyond Ms. Clark's ability to memorize.

22. Importantly, moreover, Ms. Clark was entirely transparent about the matter. The script/outline, itself, was made part of the deposition record. Ms. Clark also expressly confirmed that the answers were the Defendant's. Importantly the Plaintiffs raised no objection at the time (despite drawing much attention to her use of the script/outline). It was not until after the Defendant complained about Ms. Ayers' deposition did the Plaintiffs first complain about Ms. Clark.

23. Nor does this Court find the conduct of Defendant's counsel during Ms. Clark's deposition sanctionable. The Plaintiffs say that the Defendant's counsel, Mr. Jacobs, interjected in such a way that he acted as the de facto testifying witness and used speaking objections to otherwise guide and influence Ms. Clark's answers. The Plaintiffs overstate what happened. Like their complaint about Ms. Clark, the Plaintiffs' complaint about Mr. Jacobs concerns those questions about the specifics of the Defendant's legal positions. Mr. Jacobs saw need to make clarifications which is generally permissible. Like their complaint about Ms. Clark, the essential nature of the Plaintiffs' complaint about the Defendant's attorney, Mr. Jacobs, is not one of evasiveness or nonresponsiveness. The Plaintiffs do not complain about a lack of substantive answers but instead on how those answers were made. To the extent the Plaintiffs complain about the volume of objections and other commentary by Mr. Jacobs during Ms. Clark's deposition, this Court observes that the Plaintiffs' attorney likewise raised many objections during Ms. Ayers' deposition.

24. This is not to say that Ms. Clark's deposition was the model Rule 30(b)(6) depo-

sition. Ideally a corporate witness should be able to answer all questions fully, clearly, and independently. Ideally a corporate witness should have no need for any notes, at all, and there should be no need for clarifications. Even if Ms. Clark's deposition fell short of the ideal, it was not so egregious to warrant the requested sanctions, especially when compared to Ms. Ayers' deposition.

It is therefore,

**ORDERED AND ADJUDGED** that the Defendant's Emergency Motion to Compel Plaintiffs to Produce an Alternative 30(b)(6) Witness (DE 53) is **DENIED** in light of the procedural posture of this case. The other part of that Motion—the Defendant's Motion for Sanctions—is **GRANTED,** in part, as explained above. It is further,

**ORDERED AND ADJUDGED** that the Plaintiffs' Motion for Sanctions (DE 55) is **DENIED** in full.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 30th day of September, 2015.